**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| OpenMind Solutions, Inc., | Case No. 3:11-cv-00092-GPM-SCW |
| Plaintiff, | Judge: Hon. G. Patrick Murphy |
| v. | Magistrate Judge: Hon. Stephen C. Williams |
| DOES 1-2925, | |
| Individually, and as Representatives of a class, | |
| Defendants. | |

**BRIEF OF AMICUS CURIAE ELECTRONIC FRONTIER FOUNDATION IN
SUPPORT OF RECONSIDERATION OF THE COURT'S ORDER GRANTING EARLY
DISCOVERY OR, IN THE ALTERNATIVE, OF QUASHING PLAINTIFF'S PRE-
COMPLAINT SUBPOENAS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION ............................................................................................................ 1

ARGUMENT ................................................................................................................... 1

I.  Plaintiff Impermissibly Attempts to Circumvent Procedural Protections with an
    Uncertifiable Class. ................................................................................................... 1

    A.  Federal Courts Disapprove of Mass Joinder of Defendants in Copyright Infringement
        Cases. ................................................................................................................ 1

    B.  Plaintiff's Proposed Class Is Uncertifiable ......................................................... 3

        1.  The Proposed Class Definition Is Too Indefinite to Be Manageable. ........... 5

        2.  Class Members' Individual Defenses Will Predominate over Supposedly
            "Common" and "Typical" Issues. ............................................................... 6

        3.  Plaintiff Has Designed This Lawsuit to Deprive Defendants of Adequate
            Representation. ............................................................................................ 7

II. Plaintiffs Have Not Established that the Court Has Personal Jurisdiction Over the Vast
    Majority of the Defendants ......................................................................................... 8

    A.  Plaintiff Has Not Made a Prima Facie Showing that the Court Has Personal
        Jurisdication Over the Defendants Based on the Domicile of the Defendants. ................. 10

    B.  Plaintiff Has Not Made a Prima Facie Showing that the Court Has Personal
        Jurisdication Over the Defendants Based on Acts in Illinois. ........................................... 11

    C.  Plaintiff May Not Use the Class Action Process to Establish Personal Jurisdiction. ........ 13

    D.  Plaintiff Cannot Undertake Discovery to Find Jurisdictional Facts. ............................... 15

III. Plaintiff Has Not Met the First Amendment Test for Unmasking Anonymous Speakers. ....... 15

    A.  The Right to Engage in Anonymous Speech is Protected by the First Amendment. ......... 16

    B.  Plaintiff's Proposed Discovery Cannot Survive First Amendment Scrutiny ................... 18

        1.  Plaintiff Has Not Made the Requisite Prima Facie Case. ....................................... 18

        2.  Defendants' First Amendment Interests Far Outweigh Plaintiff's "Need" for
            Their Identities. .................................................................................................. 19

        3.  Plaintiff Must Ensure that Defendants Receive Notice of Its Pending Claim and
            Its Efforts to Unmask Them. ............................................................................... 19

CONCLUSION..........................................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adams v. Pipeliners Union*, 798, 699 P.2d 343 (Alaska 1985) ...................................................... 8

*Alliance to End Repression v. Rochford*, 565 F.2d 975 (7th Cir. 1977) ........................................ 5

*ALS Scan v. Digital Service Consultants*, 293 F.3d 707 (4th Cir. 2002) ............................... 11, 12

*Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory,"*
283 F.3d 208 (4th Cir. 2002) .......................................................................................................... 15

*Bledsoe v. Combs*, No. NA-99-153-C H/G, 2000 U.S. Dist LEXIS 7434
(N.D. Ind., Mar. 14, 2000) ................................................................................................................ 5

*BMG Music v. Does 1-203,* No. Civ.A. 04-650, 2004 WL 953888
(E.D. Pa. Apr. 2, 2004) ...................................................................................................................... 2

*BMG Music v. Does 1-4*, No. 3:06-cv-01579-MHP, 2006 U.S. Dist.
LEXIS 53237 (N.D. Cal. July 31, 2006) ........................................................................................... 2

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ................................................................ 11

*Cent. States, Se. & Sw. Areas Pension Fund v. Phencorp Reinsurance Co., Inc.*,
440 F.3d 870 (7th Cir. 2006) ..................................................................................................... 8, 15

*Dendrite Int'l, Inc. v. Doe No. 3*, 775 A.2d 756 (N.J. App. 2001) ................................... 17, 18, 19

*Doe v. 2themart.com*, 140 F. Supp. 2d 1088 (W.D. Wash. 2001) ................................................ 16

*Elektra Entm't Group, Inc. v. Does 1-9,* No. 04 Civ 2289, 2004 WL 2095581
(S.D.N.Y. Sept. 8, 2004) .................................................................................................................. 19

*Enterprise Int'l v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464
(5th Cir. 1985) ......................................................................................................................... 8, 11

*Galva Foundry Co. v. Heiden*, 924 F.2d 729 (7th Cir. 1991) ...................................................... 10

*Grandbouche v. Clancy*, 825 F.2d 1463 (10th Cir. 1987) ........................................................... 17

*Henson v. East Lincoln Township*, 814 F.2d 410 (7th Cir. 1987) .................................................. 4

*In re Verizon Internet Servs. Inc.*, 257 F. Supp. 2d 244 (D.D.C.) ............................................... 16

*In re Verizon Internet Servs. Inc.*, 351 F.3d 1229 (D.C. Cir. 2003) ............................................ 16

*Indiana State Employees Assoc. v. Indiana State Highway Comm'n*, 78 F.R.D. 724
(S.D. Ind. 1978) ................................................................................................................................. 6

Int'l Shoe Co. v. Washington, 326 U.S. 310 (1945) .............................................................. 11, 13

*Interscope Records v. Does*, 558 F. Supp. 2d 1176 (D. Kan. 2008) ............................................ 16

*IO Group, Inc. v. Does 1 - 453,* No. 10-4382 (N.D. Cal. Jan. 10, 2011)........................................ 2

*Jennings v. AC Hydraulic A/S*, 383 F.3d 546 (7th Cir. 2004)....................................................... 12

*Kenro, Inc. v. Fax Daily*, 962 F. Supp. 1162 (S.D. Ind. 1997) ...................................................... 6

*LaFace Records, LLC v. Does 1-38*, No. 5:07-CV-298-BR, 2008 WL 544992
(E.D.N.C. Feb. 27, 2008) ............................................................................................................... 2

*Lamb v. United Security Life Co.*, 59 F.R.D. 44 (S.D. Iowa 1973) ............................................... 7

*LFP Internet Group LLC v. Does 1-3,120,* No. 10-2095
(N.D. Tex. Feb. 10 2011) ............................................................................................................... 2

*Milliken v. Meyer*, 311 U.S. 457 (1940) ...................................................................................... 10

*Morrison v. YTB Int'l.*, 641 F. Supp. 2d 768 (S.D. Ill. 2009) ...................................................... 15

*Motown Records v. Does 1-252*, No. 1:04-CV-439-WBH (N.D. Ga. Aug. 16, 2004) .................. 2

*Nat'l Union Fire Ins. Co. v. Midland Bancor, Inc.*, 158 F.R.D. 681
(D. Kan. 1994) ............................................................................................................................... 4

*New York Times v. Sullivan*, 376 U.S. 254 (1964)...................................................................... 16

*Oshana v. Coca-Cola Co.*, 472 F.3d 506 (7th Cir. 2006) ........................................................ 3, 5

*Pabst Brewing, Inc. v. Corrao*, 161 F.3d 434 (7th Cir. 1998) ...................................................... 4

*Phillips Petrol. Co. v. Shutts*, 472 U.S. 797 (1985) .............................................................. 13, 14

*RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272 (7th Cir. 1997) ................................................. 9

*Reno v. ACLU*, 521 U.S. 844 (1997)........................................................................................... 16

*Revell v. Lidov*, 317 F.3d 467 (5th Cir. 2002)............................................................................ 12

*Shelley v. Kraemer*, 334 U.S. 1 (1948) ...................................................................................... 16

*Silkwood v. Kerr-McGee Corp.*, 563 F.2d 433 (10th Cir. 1977) ................................................. 17

*Sony Music Entm't, Inc. v. Does 1-40*, 326 F. Supp. 2d 556
(S.D.N.Y. 2004)....................................................................................................................... 3, 16

*Talley v. California*, 362 U.S. 60 (1960) ..................................................................................... 16

*Ticketreserve, Inc. v. Viagogo, Inc.,* 656 F. Supp. 2d 775 (N.D. Ill. 2009) ................................. 15

*Tilley v. TJX Cos.*, 345 F.3d 34 (1st Cir. 2003) ............................................................................ 1

*Twentieth Century Fox Film Corp., et al., v. Does 1-12*, No. C-04-04862
(N.D. Cal. Nov. 16, 2004).............................................................................................................. 2

*uBID, Inc. v. The GoDaddy Grp., Inc.,* 623 F.3d 423 (7th Cir. 2010)........................................... 9

*UMG Recordings, Inc. v. Does 1-4*, No. 06-0652, 2006 WL 1343597 (N.D. Cal. Mar. 6, 2006) 16

*UMG Recordings, Inc., et al. v. Does 1-51*, No. A-04-CA-704 LY (W.D. Tex. Nov. 17, 2004)... 2

*United Elec. Radio and Mach. Workers of America v. 163 Pleasant Street Corp.*,
960 F.2d 1080 (1st Cir. 1992) ........................................................................................... 8

*United States v. Henderson*, 209 Fed. Appx. 401 (5th Cir. 2006) ................................. 10

*Vandeveld v. Christoph*, 877 F.Supp. 1160 (N.D. Ill. 1995) ......................................... 11

*Virgin Records Am. v. Does 1-44,* No. 1:04-CV-0438-CC (N.D. Ga. March 3, 2004) ................. 3

*West Coast Productions v. Does 1-2010*, No. 3:10-CV-93
(N.D. W.Va., Dec. 16, 2010) ............................................................................................. 2

*White v. Sundstrand Corp.*, 256 F.3d 580 (7th Cir. 2001) ............................................... 8

*Whitson v. Heilig-Meyers Furniture*, No. CV 94-PT-0309-E, 1995 U.S. Dist.
LEXIS 4312 (N.D. Ala. Feb. 9, 1995) ............................................................................. 14

*Winder Licensing Inc. v. King Instrument Corp.*, 130 F.R.D. 392 (N.D. Ill. 1990) ...................... 3

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) ................................. 8

*Wright v. Schock*, 742 F.2d 541 (9th Cir. 1984) ............................................................ 7

## Statutes and Legislative Authorities

17 U.S.C. § 412 .................................................................................................................. 6

17 U.S.C. § 504(c) ........................................................................................................... 14

Fed. R. Civ. P. 23 ............................................................................................................... 3

Fed. R. Civ. P. 23(b)(1)(A) ............................................................................................... 3

Fed. R. Civ. P. 23(b)(1)(B) ............................................................................................... 3

Fed. R. Civ. P. 23(b)(2) ..................................................................................................... 4

Fed. R. Civ. P. 23(h) ......................................................................................................... 7

## Other Authorities

NEWBERG ON CLASS ACTIONS § 4.47 ............................................................................... 4

## INTRODUCTION

While the Court granted Plaintiff's motion for early discovery on February 11, 2011, it did so on an *ex parte* basis and without the benefit of having been informed of the critical substantive and procedural issues at stake for the literally thousands of anonymous Defendants this lawsuit targets.  This brief window – prior to Defendants' identities being disclosed – may be the last chance that the Court has to ensure that the Defendants are treated justly, that their rights are protected, and that they will not be induced to settle by the fear of embarrassment or humiliation.  The federal courts have safeguards, both procedural and substantive, to protect the rights of individual defendants in all litigation.  Plaintiff has flouted those procedures, violating the rights of the John Doe Defendants.  Amicus Electronic Frontier Foundation ("EFF") respectfully urges the Court to rescind its approval of pre-complaint discovery and take steps to restore fairness to this process.

## ARGUMENT

### I.    Plaintiff Impermissibly Attempts to Circumvent Procedural Protections with an Uncertifiable Class.

Plaintiff's proposed "class" of 2,925 individual alleged infringers is a transparent attempt to avoid established Due Process protections by filing a "class action" with no one present to call the Court's attention to these very safeguards, and then using this improper vehicle to unmask as many Does as possible. The Court should call an immediate halt to Plaintiff's gamesmanship.

#### A.    Federal Courts Disapprove of Mass Joinder of Defendants in Copyright Infringement Cases.

Plaintiff is not the first to sue numerous unrelated defendants in a single copyright infringement lawsuit, based only on the coincidence that they allegedly infringed on works owned by the same copyright holder.  *See, e.g.*, *Tilley v. TJX Inc.*, 345 F.3d 34, 42-43 (1st Cir. 2003) (vacating defendant class certification order in copyright infringement case).  Federal courts, however, have recognized that mass copyright suits may deny individual justice to those caught up in a plaintiff's indiscriminate dragnet.  Several courts have severed these cases, effectively dismissing more than 40,000 Doe defendants nationwide.  *See, e.g.*, *LFP Internet*

*Group LLC v. Does 1-3,120*, No. 10-2095 (N.D. Tex. Feb. 10, 2011) (quashing subpoenas, holding that Plaintiff did not show that the Defendants were "in any way related to each other, or that they acted in concert or as a group in their allegedly offending actions") (Amicus Curiae The Electronic Frontier Foundation's Request for Judicial Notice ("RJN"), Docket No. 12, Ex. F); *IO Group, Inc. v. Does 1 - 453*, No. 10-4382 (N.D. Cal. Jan. 10, 2011) ("[T]he allegations that defendants simply used the same peer-to-peer network to download plaintiff's work . . . is insufficient to allow plaintiff to litigate against hundreds of different Doe defendants in one action.") (RJN, Ex. G); *West Coast Productions v. Does 1-2010*, No. 3:10-CV-93 (N.D. W.Va., Dec. 16, 2010) (RJN, Ex. A).

Orders such as these, disapproving of joining large numbers of defendants in a single action under Rule 20, follow a pattern that began as early as 2004. *See, e.g., BMG Music v. Does 1-203*, No. Civ.A. 04-650, 2004 WL 953888, at *1 (E.D. Pa. Apr. 2, 2004) (severing lawsuit involving 203 defendants); *LaFace Records, LLC v. Does 1-38*, No. 5:07-CV-298-BR, 2008 WL 544992, at *2 (E.D.N.C. Feb. 27, 2008) (severing a lawsuit against thirty-eight defendants where each defendant used the same ISP as well as some of the same networks to commit the exact same violation of the law in exactly the same way: "[M]erely committing the same type of violation in the same way does not link defendants together for purposes of joinder."); *BMG Music v. Does 1-4*, No. 3:06-cv-01579-MHP, 2006 U.S. Dist. LEXIS 53237, at *5-6 (N.D. Cal. July 31, 2006) (severing, *sua sponte*, multiple defendants in action where the only connection between them was allegation they used same ISP to conduct copyright infringement); *UMG Recordings, Inc., et al. v. Does 1-51*, No. A-04-CA-704 LY (W.D. Tex. Nov. 17, 2004) (RJN, Ex. B) (dismissing without prejudice all but the first of 254 defendants accused of unauthorized music file-sharing); *Twentieth Century Fox Film Corp., et al., v. Does 1-12*, No. C-04-04862 (N.D. Cal. Nov. 16, 2004) (permitting discovery to identify first of twelve Doe defendants but

staying case against remaining Does until plaintiff could demonstrate proper joinder) (RJN, Ex. C).[1]

### B.   Plaintiff's Proposed Class Is Uncertifiable.

Presumably recognizing that the present action could not be maintained under Rule 20, Plaintiff instead proposes to maintain it as a class action under Rule 23.  The same issues of procedural unfairness, unmanagability, and sacrifice of individual rights that render joinder inappropriate in mass-download infringement make the proposed use of a class action procedure even more inappropriate.  Indeed, Plaintiff's proposed class violates nearly every requirement of Rule 23.

Rule 23 states:

One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

(1) the class is so numerous that joinder of all members is impracticable,

(2) there are questions of law or fact common to the class,

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23.

These requirements are commonly known as numerosity, commonality, typicality, and adequacy.  Courts also require that a proposed class definition be "definite enough that the class can be ascertained."  *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006).  In addition to satisfying these threshold requirements, any class action must fit within one of the categories detailed in Rule 23(b).  Here, Plaintiff proposes to certify the class under section (b)(3):[2]

---

[1] Amicus recognizes that such judicial analysis has not been universal.  *See, e.g.*, *Motown Records v. Does 1-252*, No. 1:04-CV-439-WBH (N.D. Ga. Aug. 16, 2004) (denying motion to quash); *Virgin Records Am. v. Does 1-44*, No. 1:04-CV-0438-CC (N.D. Ga. Mar. 3, 2004) (granting leave to take expedited discovery); *Sony Music Entm't, Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 564 (S.D.N.Y. 2004) (applying First Amendment balancing test but denying as premature motion to quash based on misjoinder and lack of personal jurisdiction).
[2] Plaintiff proposes to proceed only under section (b)(3) with good reason.  None of the other options is appropriate in copyright infringement cases.  Section (b)(1)(A), which allows class

A class action may be maintained only if Rule 23(a) is satisfied and if:

> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
>> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>>
>> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>>
>> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>>
>> (D) the likely difficulties in managing a class action.

*Id*.

These two requirements are commonly known as predominance and superiority. In the present case, the purported class as described by Plaintiff clearly violates definiteness, commonality, typicality, adequacy, predominance, and superiority. It arguably does satisfy numerosity, but only because Plaintiff chosen to pursue its distinct complaints against different Defendants en masse.

Due to the inherently troubling nature of suing a class of unnamed defendants, most – if not all – of whom will not be responsible for his or her own defense, the "due process rights of unnamed class members of a defendant class are entitled to special solicitude." *Pabst Brewing, Inc. v. Corrao*, 161 F.3d 434, 439 (7th Cir. 1998); *see also Newberg on Class Actions* § 4.47 ("[A] defendant class requires closer scrutiny of Rule 23 tests to assure fairness to absent

---

actions when there is a danger of imposing "incompatible standards of conduct for the party opposing the class," F.R.C.P. 23(b)(1)(A), does not apply because an infringement verdict sets a standard of conduct for a defendant, not for a plaintiff. *See Winder Licensing Inc. v. King Instrument Corp.*, 130 F.R.D. 392 (N.D. Ill. 1990) (denying certification in patent infringement case). Section (b)(1)(B), which allows class actions when individual verdicts would in practice be dispositive of other class members' rights, F.R.C.P. 23(b)(1)(B), does not apply because collateral estoppel would work only against a losing plaintiff, not against a defendant class member. *See Nat'l Union Fire Ins. Co. v. Midland Bancor, Inc.*, 158 F.R.D. 681, 686-87 (D. Kan. 1994). And section (b)(2), which allows class treatment when "the party opposing the class has acted or refused to act on grounds that apply generally to the class," F.R.C.P. 23(b)(2), does not apply because in a defendant class action, it is the class members, not the "party opposing the class," who have acted or refused to act. *See Henson v. East Lincoln Township*, 814 F.2d 410, 414-17 (7th Cir. 1987).

members based on long-standing due process protections for defendants. . . [S]tricter due process considerations put greater limits on the use of defendant classes than plaintiff classes.").

Amicus recognizes that the issue of whether to certify a class is not directly before the Court, as Plaintiff has not moved for certification.  That is precisely the point of Plaintiff's strategy.  By deferring certification, Plaintiff hopes to deter the Court from inspecting too closely its Potemkin class action.  As with other mass copyright suits filed all over the country, the true goal is not class litigation or even to reach the merits, but to discover Defendants' identities and to extract settlements from fearful, unrepresented, and poorly informed individuals.

### 1.        The Proposed Class Definition Is Too Indefinite to Be Manageable.

Although Plaintiff has submitted a list of alleged infringers, identified by their IP addresses at particular times (Complaint, Ex. A), it does not confine its proposed class definition to the individuals on that list.  Instead, Plaintiff proposes a class defined as:

> All persons, except those with whom settlement has been reached, engaged in copyright infringement activity via BitTorrent file sharing protocol during relevant time period (October 2010, until the date the Court enters an order certifying a defendant class) against Plaintiff's copyrighted works associated with the torrent files enumerated in Exhibit A.

Complaint ¶ 32.[3]

Plaintiff's proposed definition is not "definite enough that the class can be ascertained." *Oshana*, 472 F.3d at 513 (citing *Alliance to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir. 1977)).  A class definition must enable a court to "determine whether any individual was a member of the class without hearing evidence on what would amount to the merits of each person's claim."  *Bledsoe v. Combs*, No. NA-99-153-C H/G, 2000 U.S. Dist LEXIS 7434, at *11 (N.D. Ind., Mar. 14, 2000).  Here, the class definition depends on whether an individual "engaged in copyright infringement activity" of one of Plaintiff's works – that is, on the

---

[3] In the alternative, Plaintiff proposes a sub-class of Illinois residents only.  Complaint ¶ 33. While this restriction would address some of the personal jurisdiction issues with respect to the proposed class, it would not solve the other problems described by amicus.  Moreover, it will be impossible to determine which individuals are class members of an Illinois sub-class without engaging in precisely the ex parte discovery to which amicus objects.

substantive liability of each individual defendant under the Copyright Act.  That, however, will be an intensely fact-specific inquiry, including such issues as whether the Defendant's IP address at the relevant time has been correctly identified, whether another person was using the Defendant's Internet connection, and whether the Defendant's conduct was a fair use or otherwise permitted by the Copyright Act.  Such a class definition, which would require a "determination of ultimate liability as to that person," *Indiana State Employees Assoc. v. Indiana State Highway Comm'n*, 78 F.R.D. 724, 725 (S.D. Ind. 1978), does not satisfy Rule 23(a). *Kenro, Inc. v. Fax Daily*, 962 F. Supp. 1162, 1169 (S.D. Ind. 1997).  Rather than confining its efforts to a discrete and identifiable set of defendants, as required by the Federal Rules, Plaintiff impermissibly seeks the Court's assistance in pursuing a fishing expedition against an uncertain and ill-defined group of individual Defendants.

### 2.    Class Members' Individual Defenses Will Predominate over Supposedly "Common" and "Typical" Issues.

In light of Plaintiff's pre-complaint discovery request, its claims that "typical defenses common to all and certain to be vigorously asserted by the named Defendants include First Amendment rights to anonymous communication and rights to privacy," Complaint ¶ 36, is disingenuous.  If this Court allows Plaintiff to take discovery from ISPs on the identities of Defendants, their First Amendment and privacy claims will become moot.  Thus, Plaintiff has structured its lawsuit so that by the time class representatives capable of asserting Defendants' privacy rights exist, those rights will *already* have been violated.  They will not then be a "typical" issue in common among the class, leaving a class lacking in the required typicality; indeed, Plaintiff admits as much, stating in its Complaint that "some defenses of noninfringement may be more tailored to an individual."  Complaint ¶ 36.

This problem is especially acute here.  For example, Plaintiff alleges infringement of many different copyrighted works, yet it fails to allege that it owned registrations for each and in fact only alleges that it owns "application[s] for registration."  Complaint, Ex. A; Complaint ¶ 20.  Under 17 U.S.C. § 412, a plaintiff cannot sue for statutory damages or attorneys' fees unless

the infringement "commenced after first publication of the work and before the effective date of its registration, unless the registration is made within three months after the first publication of the work."  It seems highly unlikely that the registration for each work occurred less than three months before any of the Defendants allegedly infringed the work, especially because some of the infringements alleged by Plaintiff occurred as early as January 2010.  *See, e.g.*, Complaint, Ex. A at 64.  Therefore, it is entirely feasible – and in fact likely – that many Defendants will be able to argue that Plaintiff is not entitled to statutory damages and attorneys' fees, while some Defendants, faced with defending infringement claims based on different copyrights, may not be able to make the same arguments.

### 3.    Plaintiff Has Designed This Lawsuit to Deprive Defendants of Adequate Representation.

Perhaps most troubling about Plaintiff's proposed class is that it seems designed precisely to deny Defendants the type of robust representation they will need. Plaintiff claims that "Class representatives will be represented by counsel competent and experienced in the defense of copyright and class action litigation."  Complaint ¶ 37.  At this point, this is nothing more than speculation and reasons exist to doubt that it will ever be true.  It is unlikely that the named class representatives, whoever they may eventually be, will be willing or able to bear the heavy financial burden of litigating a complex class action with "competent and experienced" counsel, and it is unfair to expect them to do so.  The nature of Plaintiff's works – "adult entertainment content," Complaint ¶ 3 – and the nature of the alleged infringement – downloading and uploading those works as part of a peer-to-peer file-sharing network – make it likely that most or all of the class members will be individuals, rather than businesses with correspondingly large resources necessary to conduct large-scale class action litigation.

Further, the fact that this is purportedly a defendant class action removes the most common form of class action financing:  contingent fee awards.  *See* Fed .R. Civ. P. 23(h) (providing for fee awards to successful class counsel).  "Absent class members have no obligation to pay attorneys' fees and litigation costs, except when they elect to accept the benefit

of the litigation." *Wright v. Schock*, 742 F.2d 541, 545 (9th Cir. 1984) (citing *Lamb v. United Security Life Co.*, 59 F.R.D. 44, 48-49 (S.D. Iowa 1973)).  In a plaintiff class action, the "benefit" is provided by the defendant to the class, and is available to serve as a source of fees. In a defendant class action, however, all that the class receives if it wins is the continuation of the status quo.  Accordingly, "when there is no fund, a court cannot assess attorney's fees against individual class members." *Adams v. Pipeliners Union 798*, 699 P.2d 343, 349 (Alaska 1985); *see also White v. Sundstrand Corp.*, 256 F.3d 580, 585 (7th Cir. 2001) (refusing to assess costs against absent class members, who had not been provided with notice or an opportunity to opt out).  The result is that whomever Plaintiff attempts to designate as class representative will be left to finance the entire class defense on his or her own, most likely leaving the remainder of the class with inadequate representation.

## II.     Plaintiffs Have Not Established that the Court Has Personal Jurisdiction Over the Vast Majority of the Defendants.

In addition to the numerous other fatal flaws in Plaintiff's litigation approach, Plaintiff has not met and cannot meet its burden to establish that this Court has personal jurisdiction over the vast majority of the Defendants.  Consequently, the Court may not authorize or enforce any discovery Plaintiff seeks about or directed at those Defendants.  *Cent. States, Se. & Sw. Areas Pension Fund v. Phencorp Reinsurance Co., Inc.*, 440 F.3d 870, 877 (7th Cir. 2006) (holding that a prima facie case for personal jurisdiction must be made before discovery is allowed); *see also Enterprise Int'l v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 470-471 (5th Cir. 1985) (no authority to issue preliminary relief without personal jurisdiction); *accord United Elec. Radio and Mach. Workers of America v. 163 Pleasant Street Corp.*, 960 F.2d 1080, 1084 (1st Cir. 1992) (same).

The Constitution imposes on every plaintiff the burden of establishing personal jurisdiction as a fundamental matter of fairness, recognizing that no defendant should be forced to have his rights and obligations determined in a jurisdiction with which he has had no contact. These requirements allow "potential defendants to structure their primary conduct with some

minimum assurance as to where that conduct will and will not render them liable to suit." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).  Accordingly, the Plaintiff bears the burden of pleading facts sufficient to support the Court's exercise of personal jurisdiction over the Defendants.  Simply reciting personal jurisdiction requirements is not enough, nor are the assertions of naked legal conclusions; rather, Plaintiff must assert the factual basis underlying its claims.  *See*, *e.g.*, *uBID, Inc. v. The GoDaddy Grp., Inc.*, 623 F.3d 423, 423 (7th Cir. 2010) (stating that plaintiff bears the burden of making a prima facie case for personal jurisdiction); *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997) ("The plaintiff, moreover, has the burden of demonstrating the existence of personal jurisdiction.").

Plaintiff has offered three theories for the Court's exercise of personal jurisdiction over the Defendants:  first, that "putative named class representative Defendants are residents of Illinois"; second, that the "Court has *in personam* jurisdiction over absent class members because due process is satisfied by providing them with best practicable notice, an opportunity to opt-out, and adequate representation"; and third, that Defendants' "infringing activity should have reasonably been anticipated to violate the Copyright Act in this jurisdiction."  Complaint ¶ 6. Plaintiff has not made a prima facie showing for the first or third allegation for the vast majority of the Defendants, and the second allegation misstates the applicable law.  Consequently, Plaintiff's motion for discovery into the identities of the Defendants should be denied.

At the outset, Plaintiff's supposed distinction between "putative named class representative Defendants" and "absent class members" is meaningless.  Plaintiff has not even attempted to nominate class representatives.  Instead, *all* Defendants are currently "absent," unrepresented, and without notice of the present lawsuit.  Accordingly, amicus will discuss Plaintiff's jurisdictional allegations without differentiating among Defendants.

**A.    Plaintiff Has Not Made a Prima Facie Showing that the Court Has Personal Jurisdiction Over the Defendants Based on the Domicile of the Defendants.**

Federal courts may exercise personal jurisdiction over individuals whose domicile is within the jurisdiction.[4]  *See, e.g.*, *United States v. Henderson*, 209 Fed. Appx. 401, 402 (5th Cir. 2006); *Milliken v. Meyer*, 311 U.S. 457, 463-64 (1940).  For many Defendants, however, Plaintiff has plainly failed to make a prima facie showing to support this purported basis for jurisdiction.  The only jurisdictional facts alleged by Plaintiff are the "IP address identifying each Defendant, as well as the corresponding torrent file swarm/copyright work in which Defendant was participating, and the date and time of Defendant's activity" that it includes as Exhibit A to its Complaint.  Complaint ¶ 23; Complaint, Ex. A.  Not only does this submission not indicate that many of the Defendants are residents of Illinois; it suggests that the Defendants were outside of Illinois when the allegedly infringing activity took place.

For example, the Plaintiff points to one Defendant with the IP address 137.229.56.183.  Complaint, Ex. A, at 3.  Based on Plaintiff's own evidence, this IP address is registered to the University of Alaska.  *Id.*  Other ISPs identified by Exhibit A include MetroCast Cablevision of New Hampshire LLC, *id.* at 5, the Massachusetts Institute of Technology, *id.* at 10, and Georgia Public Web Inc., *id.* at 12.  Commercial ISPs named dozens of times in Exhibit A to the Complaint, such as Cox Communications, *id. passim*, do not provide Internet service in Illinois.

With no evidence supporting the claim that Defendants are "residents" of Illinois, and with Plaintiff's own submissions supporting the opposite conclusion – that the vast majority of the Defendants indeed are domiciled elsewhere – the Court should find that it lacks personal jurisdiction over Defendants.

---

[4] As pled, Plaintiff alleges that the Court has personal jurisdiction over the Defendants based on "residen[cy]" as opposed to domicile.  Complaint ¶ 6.  Although residency is an insufficient basis for personal jurisdiction as individuals may have several residencies but only one domicile at a time.  *See, e.g.*, *Galva Foundry Co. v. Heiden*, 924 F.2d 729, 730 (7th Cir. 1991) (disputing an argument that one can have two residencies, choosing one as his domicile "because it makes changing one's domicile too easy").  Defendants will treat Plaintiff's jurisdictional allegation as one based on domicile and not residency for purposes of this brief.

**B.** **Plaintiff Has Not Made a Prima Facie Showing that the Court Has Personal Jurisdication Over the Defendants Based on Acts in Illinois.**

Plaintiff alternatively argues that the Court has personal jurisdiction over the Defendants because Defendants' "infringing activity should have been reasonably anticipated to violate the Copyright Act in this jurisdiction." Complaint ¶ 6. Plaintiff has not met its prima facie burden on this jurisdictional argument either.

In order for a court to exercise personal jurisdiction over a non-consenting, non-resident defendant, suit in the forum at issue must be consistent with the requirements of the Due Process Clause.[5] Accordingly, a plaintiff must demonstrate that: (1) the non-resident "has 'minimum contacts' with the forum" and (2) "requir[ing] the defendant to defend its interests in that state 'does not offend traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-77 (1985). Plaintiff has not met this burden.

As discussed above, the only jurisdictional facts identified by the Plaintiff (i.e., the IP addresses it associates with each Defendant) give no indication that the copyright infringement occurred in this state. Plaintiff provides no additional evidence otherwise.[6] Without the necessary prima facie evidence to support the claim that the alleged infringement took place within the state, Plaintiff has not established minimum contacts and therefore this Court cannot exercise personal jurisdiction over the Doe Defendants. *See, e.g.*, *Enterprise Int'l*, 762 F.2d at 470-471 (no authority to issue preliminary relief without personal jurisdiction).

To the extent that Plaintiff claims personal jurisdiction based on the cross-border accessibility of information on the Internet, courts have long rejected such theories of effective universal jurisdiction. As the Fourth Circuit explained in *ALS Scan v. Digital Service Consultants*, 293 F.3d 707 (4th Cir. 2002):

---

[5] A court's exercise of personal jurisdiction over non-consenting, non-resident defendants must additionally be authorized by statute. The Illinois long-arm statute reaches as far as the Due Process Clause will permit. *See*, *e.g.*, *Vandeveld v. Christoph*, 877 F.Supp. 1160, 1164 (N.D. Ill. 1995) ("[T]he Illinois long-arm statute is now co-extensive with the limits of due process.").

> The argument could . . . be made that the Internet's electronic signals are surrogates for the person and that Internet users conceptually enter a State to the extent that they send their electronic signals into the State, establishing those minimum contacts sufficient to subject the sending person to personal jurisdiction in the State where the signals are received. .. But if that broad interpretation of minimum contacts were adopted, State jurisdiction over persons would be universal, and notions of limited State sovereignty and personal jurisdiction would be eviscerated.

*Id.* at 712-713 (citations omitted).  Accordingly, the Fourth Circuit limited the exercise of personal jurisdiction based on Internet usage to situations where the defendant "(1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts."  *Id.* at 714.

Under this standard, which has been echoed by the Seventh Circuit, "a person who simply places information on the Internet does not subject himself to jurisdiction in each State into which the electronic signal is transmitted and received."  *Id.*; *see also Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 550 (7th Cir. 2004) ("Premising personal jurisdiction on the maintenance of a website, without requiring some level of 'interactivity' between the defendant and consumers in the forum state, would create almost universal personal jurisdiction because of the virtually unlimited accessibility of websites across the country."); *Revell v. Lidov*, 317 F.3d 467, 475-76 (5th Cir. 2002) ("The defendant must be chargeable with knowledge of the forum at which his conduct is directed in order to reasonably anticipate being haled into court in that forum.").

In the immediate case, even assuming that each of the Defendants knew that he or she was infringing a copyright of OpenMind Solutions, there is no evidence that OpenMind has any connection to Illinois, nor, if such a connection does exist, that any of the Does were aware of it. Consequently, Plaintiff has not made a prima facie showing that any of the Defendants had any idea that Plaintiff OpenMind Solutions, Inc., would suffer any harm in Illinois.

 Requiring individuals from across the country urgently to secure counsel far from home, where they are unlikely to have contacts, creates exactly the sort of hardship and unfairness that the personal jurisdiction requirements exist to prevent.  In this particular instance the hardship is

very clear.  When the underlying claim is a single count of copyright infringement, the cost of securing counsel even to defend a Defendant's identity is likely more than the cost of settlement and possibly even more than the cost of judgment if the Defendant lost in the litigation entirely.

Plaintiff has not met its burden to establish this Court's jurisdiction over the Does, a burden that must be met prior to early discovery, not after.  Accordingly, amicus urges the Court to vacate its ruling on Plaintiff's Motion for Early Discovery, quash all pending subpoenas, and issue a *sua sponte* order requiring Plaintiff to show cause why the action should not be dismissed against those Defendants whose IP addresses do not suggest presence in the forum.

### C.   Plaintiff May Not Use the Class Action Process to Establish Personal Jurisdiction.

Plaintiff also argues that the Court has personal jurisdiction over the Defendants as a defendant class "because due process is satisfied by providing them with best practicable notice, an opportunity to opt-out, and adequate representation."  Complaint ¶ 6.  This claim is based upon an entirely inapposite Supreme Court decision holding that a *plaintiff* class members' Due Process rights were not violated by their inclusion in the class even if the lower court would not have had personal jurisdiction over them.  *Phillips Petrol. Co. v. Shutts*, 472 U.S. 797, 814 (1985).  This decision has no bearing here, as it applied only to a particular type of *plaintiff* class. Indeed, *Shutts expressly* reserved decision on jurisdiction over defendant classes:

> Our holding today is limited to those class actions which seek to bind known plaintiffs concerning claims wholly or predominately for money judgments. We intimate no view concerning other types of class actions, such as those seeking equitable relief. Nor, of course, does our discussion of personal jurisdiction address class actions where the jurisdiction is asserted against a defendant class.

*Id.* at 813 n.3.

The *Shutts* Court's reasoning repeatedly emphasized the basic asymmetry between plaintiffs and defendants.  It explained that the purpose of the *Int'l Shoe* "minimum contacts" inquiry was "to protect a defendant from the travail of defending in a distant forum," *id.* at 807, and that "the burdens placed by a State upon an absent class-action plaintiff are not of the same order or magnitude as those it places upon an absent defendant," *id.* at 808.  In contrast with a

plaintiff who risks losing only her ability to bring suit, an "out-of-state defendant summoned by a plaintiff is faced with the full powers of the forum State to render judgment *against* it." *Id.* (emphasis in original).

In a lawsuit for damages, like the present action, defendants are equally at risk whether they are sued individually or en masse. Unlike a plaintiff, who can only gain by bringing suit, a defendant must litigate merely to maintain the status quo, sometimes in the face of immense potential liability. Here, Plaintiff alleges "willful" infringement, Complaint ¶ 26, and seeks statutory damages, Complaint ¶ 28, which can range up to $150,000. *See* 17 U.S.C. § 504(c). Plaintiff also seeks the extraordinary remedy of an injunction, Complaint ¶10, attorney's fees, Complaint ¶ 29, and to commence discovery against Defendants, Complaint ¶ 2.   As the Court explained:

> The defendant may be forced to participate in extended and often costly discovery, and will be forced to respond in damages or to comply with some other form of remedy imposed by the court should it lose the suit. The defendant may also face liability for court costs and attorney's fees. These burdens are substantial, and the minimum contacts requirement of the Due Process Clause prevents the forum State from unfairly imposing them upon the defendant.

*Shutts*, 472 U.S. at 808.  Thus, before a forum court may exercise such extensive power over a defendant, it "must have personal jurisdiction over each member of a defendant class." *Whitson v. Heilig-Meyers Furniture*, 1995 U.S. Dist. LEXIS 4312, at *48 n.17 (N.D. Ala. Feb. 9, 1995).

Plaintiff's notice of subpoenas also violates *Shutts'*s central holding that, in order to comport with due process, class members must be adequately represented "at all times." *Shutts*, 472 U.S. at 812.  Here, not only has no class been certified and no class counsel appointed to represent Defendants, there are currently *no* class members before the Court and *no* counsel for any Defendants, even in an individual capacity.  Complete absence of representation is the very opposite of the adequate representation at all times required by *Shutts*.  Plaintiff cannot request that the Court treat this case as a class action for discovery purposes while also asking the Court to disregard the basic due process rights the Supreme Court has recognized for class members.

### D.     Plaintiff Cannot Undertake Discovery to Find Jurisdictional Facts.

To the extent that Plaintiff argues that it should be granted leave to seek discovery in support of its jurisdictional allegations, this effort too must fail.  Plaintiff's failure to meet its jurisdictional burden is to be determined before discovery is issued, not after.

When seeking discovery on personal jurisdiction, a plaintiff is required to make a "preliminary showing of jurisdiction" before she is entitled to discovery.  *See, e.g.*, *Ticketreserve, Inc. v. Viagogo, Inc.*, 656 F. Supp. 2d 775, 782 (N.D. Ill. 2009) ("At minimum, the plaintiff must establish a prima facie showing of personal jurisdiction before discovery will be permitted."); *see also Cent. States*, 230 F.3d 934 at 946 ("At a minimum, the plaintiff must establish a colorable or prima facie showing of personal jurisdiction before discovery should be permitted.").  However, it is well within the district court's discretion to deny discovery requests where the plaintiff "offers only speculation" of jurisdiction; "fishing expeditions" into jurisdictional facts are strongly disfavored.  *See, e.g.*, *Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory"*, 283 F.3d 208, 216 n.3 (4th Cir. 2002) (holding that a court can deny a discovery request if "the plaintiff simply wants to conduct a fishing expedition in the hopes of discovering some basis of jurisdiction"); *Morrison v. YTB Int'l.*, 641 F. Supp. 2d 768, 781 n.8 (S.D. Ill. 2009) (denying a discovery request is appropriate where "the requested discovery amounts merely to a fishing expedition").  Where, as here, the Plaintiff's own factual allegations plainly serve only to demonstrate the absence of proper jurisdiction, the Court should decline to extend this case further.

### III.    Plaintiff Has Not Met the First Amendment Test for Unmasking Anonymous Speakers.

Plaintiffs are often allowed discovery at the outset of a lawsuit to identify otherwise unknown persons alleged to have committed a legal wrong.  However, in its motion for leave to seek early discovery, Plaintiff failed to apprise the Court of the appropriate discovery standard in cases where, as here, Defendants are alleged to have engaged in anonymous communication and Plaintiff's claims arise from those alleged activities.  Especially given the number of Doe

Defendants affected and the pornographic nature of the movies in question, it is crucial that Plaintiff follows the appropriate procedures before individuals' identities are disclosed.

### A.   The Right to Engage in Anonymous Speech is Protected by the First Amendment.

The United States Supreme Court has consistently upheld the right to anonymous speech in a variety of contexts, noting that "[a]nonymity is a shield from the tyranny of the majority . . . [that] exemplifies the purpose [of the First Amendment] to protect unpopular individuals from retaliation . . . at the hand of an intolerant society."  *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995).  This fundamental right enjoys the same protections whether the context for speech and association is an anonymous political leaflet, an Internet message board or a video-sharing site.  *Reno v. ACLU*, 521 U.S. 844, 870 (1997) (holding that there is "no basis for qualifying the level of First Amendment scrutiny that should be applied to" the Internet); *see also*, *e.g.*, *Doe v. 2themart.com*, 140 F. Supp. 2d 1088, 1092 (W.D. Wash. 2001) (stating that the Internet promotes the "free exchange of ideas" because people can easily engage in such exchanges anonymously).

First Amendment protection extends to the anonymous publication of expressive works on the Internet, even if the publication is alleged to infringe copyrights.  *See Sony Music Entm't, Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 564 (S.D.N.Y. 2004) ("The use of P2P file copying networks to download, distribute or make sound recordings available qualifies as speech entitled to First Amendment protection."); *see also, e.g.*, *In re Verizon Internet Servs. Inc.*, 257 F. Supp. 2d 244, 260 (D.D.C.), *rev'd on other grounds*, 351 F.3d 1229 (D.C. Cir. 2003); *Interscope Records v. Does*, 558 F. Supp. 2d 1176, 1178 (D. Kan. 2008); *UMG Recordings, Inc. v. Does 1-4*, No. 06-0652, 2006 WL 1343597, at *2 (N.D. Cal. Mar. 6, 2006).  In *Sony*, the court concluded that a file sharer is "making a statement" by downloading a work without charge or license. 326 F. Supp. 2d at 564.  In addition, a file sharer is expressing himself by selecting and sharing particular content.  *Id.*  Thus, a file sharer is entitled to "some level of First Amendment protection."  *Id.*

Because the First Amendment protects anonymous speech and association, efforts to use the power of the courts to pierce anonymity are subject to a qualified privilege.[7]  And, just as in other cases in which litigants seek information that may be privileged, courts must consider the privilege before authorizing discovery.  *See*, *e.g.*, *Grandbouche v. Clancy*, 825 F.2d 1463, 1466 (10th Cir. 1987) (citing *Silkwood v. Kerr-McGee Corp.*, 563 F.2d 433, 438 (10th Cir. 1977)) ("[W]hen the subject of a discovery order claims a First Amendment privilege not to disclose certain information, the trial court must conduct a balancing test before ordering disclosure.").

Only a compelling government interest can overcome such First Amendment rights, and the mere filing of a lawsuit does not make the identification of a defendant a compelling interest unless there is good reason to believe that the suit has a legitimate basis.  The identification of an anonymous speaker is a form of relief to the plaintiff (because it can enable extra-judicial self-help such as that seen in these mass lawsuits), and it harms the anonymous defendant, who cannot recover his right of anonymous expression.  Relief – an order that benefits the plaintiff and hurts the defendant – is not customarily given without some proof of wrongdoing.

Of course, the constitutional privilege to remain anonymous is not absolute.  Plaintiffs may properly seek information necessary to pursue *meritorious* litigation.  Accordingly, courts evaluating attempts to unmask anonymous speakers have adopted standards that balance one person's right to speak anonymously with a litigant's legitimate need to pursue a claim.

In reaching this balance, courts rely on the seminal case of *Dendrite Int'l, Inc. v. Doe No. 3*, 775 A.2d 756 (N.J. App. 2001).  Under *Dendrite*, a plaintiff must:

1)  make reasonable efforts to notify the accused Internet user of the pendency of the identification proceeding and explain how to present a defense;

2)  set forth the exact actions of each Doe defendant that constitute actionable cause;

3)  allege all elements of the cause of action and introduce prima facie evidence for each Doe defendant sufficient to survive a motion for summary judgment; and

---

[7] A court order, even if granted to a private party, is state action and hence subject to constitutional limitations. *See*, *e.g.*, *New York Times v. Sullivan*, 376 U.S. 254, 265 (1964); *Shelley v. Kraemer*, 334 U.S. 1, 14 (1948).

4) "balance the defendant's First Amendment right of anonymous free speech against the strength of the prima facie case presented and the necessity for the disclosure of the anonymous defendant's identity to allow the plaintiff to properly proceed."

*Dendrite*, 775 A.2d at 760-61.

The *Dendrite* test most accurately and cogently outlines the important First Amendment interests of the Doe Defendants and should be applied here.

### B.    Plaintiff's Proposed Discovery Cannot Survive First Amendment Scrutiny.

The Plaintiff fails every element of the *Dendrite* test.

### 1.    Plaintiff Has Not Made the Requisite Prima Facie Case.

Critically, Plaintiff has not provided sufficient prima facie evidence that any Defendant infringed Plaintiff's exclusive right to reproduce and distribute its copyrighted work.  Plaintiff contends that Defendants "illegally reproduced and distributed Plaintiff's copyrighted creative works via the BitTorrent file sharing protocol."  Complaint ¶ 1.  However, in support of this contention, Plaintiff proffers only that by means of an undisclosed "proprietary technology," Plaintiff's agent "monitored" those "involved in distributing the copyrighted creative works relevant to Plaintiff's action."  Declaration of David Pfister in Support of Plaintiff's *Ex Parte* Motion for Leave to Take Discovery Prior to Rule 26(f) Conference ("Pfister Decl.") ¶ 12. Plaintiff does not meet its prima facie burden with this meager showing.  Indeed, Plaintiff's agent even fails to draw the connection between the "proprietary" technology employed and the 2,925 IP addresses identified in Exhibit A to the Complaint.

Instead of the conclusory general showing made to date, Plaintiff must present *specific* evidence for *each* Defendant.  At minimum, Plaintiff must present "competent evidence" regarding the investigative process used to obtain Plaintiff's proffered allegations about each Defendant, and competent evidence that would permit Defendants (and the Court) to evaluate the technology's reliability and completeness.  This information should be available to the Plaintiff; providing it as part of its prima facie showing would not be unduly burdensome.  *See Dendrite*, 775 A.2d at 772.  *See also* Declaration of Seth Schoen ("Schoen Decl.") ¶¶ 2, 4-10.

Moreover, requiring this showing would be reasonable and consistent with the requirements set forth by other courts in similar file sharing cases.  Those courts have found the prima facie burden met with the submission of screen shots showing the IP addresses of each Defendant (so the court can see that the submitted IP addresses match those discovered during the investigation), copies or real-time capture of the "licensed technologies" used, proof that the downloaded movie matched Plaintiff's original film, and shots of the server logs to which the Plaintiff claims to have had access.  *See*, *e.g.*, *Elektra Entm't Group, Inc. v. Does 1-9*, No. 04 Civ. 2289, 2004 WL 2095581, \*4 (S.D.N.Y. Sept. 8, 2004).

Without such evidence, the Court must simply accept Plaintiff's word that its "proprietary" technology functions in a way that confirms actual copyright infringement, that it functioned properly in this instance, collected the IP addresses submitted with its complaint and linked them to an actual infringement of the movie.  Given the harm that can come from a false accusation, the Court should require more.

### 2. Defendants' First Amendment Interests Far Outweigh Plaintiff's "Need" for Their Identities.

Even if Plaintiff could satisfy the other steps of the Doe standard required by the First Amendment, the Court must still "balance the defendant's First Amendment right of anonymous free speech against the strength of the prima facie case presented and the necessity for the disclosure of the anonymous defendant's identity to allow the plaintiff to properly proceed." *Dendrite*, 775 A.2d at 760-61.  Producers of adult content are entitled to the same legal redress as other copyright holders, but the nature of the material in question necessarily amplifies the risk of reputational harm resulting from a mistaken identification.  Given the myriad procedural problems outlined above, and the lack of transparency about the means by which the Plaintiff generated its list of "infringers," the Court should prevent Plaintiff from taking further shortcuts.

### 3. Plaintiff Must Ensure that Defendants Receive Notice of Its Pending Claim and Its Efforts to Unmask Them.

In addition to the substantive requirements identified above, the First Amendment also requires that the anonymous Defendants be given adequate notice of the pending action and

discovery. *Dendrite*, 775 A.2d at 760-61. Accordingly, if the Court permits discovery to go forward, it should require that any subpoena to Internet Service Providers (ISPs) seeking the identity of anonymous Internet users must be accompanied by a cover notice ordering the ISP:

> (a) to notify, within seven days of service of the subpoena, any person whose information has been sought that such information may be disclosed, and briefly describe their rights and options; and

> (b) to provide sufficient opportunity for the subscriber to exercise those rights, such as by moving to quash.

To assist the Court, amicus attaches hereto a draft notice based on the procedures issued by other courts hearing similar cases. *See* Notice, Ex. 1. Such procedures can help ensure that all involved have an opportunity to represent their interests.

## CONCLUSION

Plaintiff has the right to seek legal redress for alleged copyright infringement, but it must follow the basic procedures and due process requirements applicable to all civil litigation. Amicus therefore respectfully urges this Court to vacate its ruling on Plaintiff's Motion for Expedited Discovery, quash any outstanding subpoenas already issued by the Plaintiff, and require Plaintiff to immediately notify their recipients that the subpoenas have been quashed. Amicus also suggests that the Court dismiss the action *sua sponte* and require that Plaintiff re-file individual cases against individual Defendants in courts that can properly exercise jurisdiction.

Respectfully submitted,

Dated: March 22, 2011          By */s/ Charles Lee Mudd, Jr.*
                                   Charles Lee Mudd Jr.
                                   Mudd Law Offices
                                   3114 West Irving Park Road, Suite 1W
                                   Chicago, Illinois 60618
                                   (773) 588-5410
                                   Cook County Attorney No.: 38666
                                   ARDC: 6257957
                                   cmudd@muddlawoffices.com

Julie Samuels
Electronic Frontier Foundation
454 Shotwell St.
San Francisco, CA 94110
(415) 436-9333
julie@eff.org

James Grimmelmann
Associate Professor
New York Law School
185 West Broadway
New York, NY 10013
(212) 431-2368
james.grimmelmann@nyls.edu

Attorneys for Amicus Curiae

## CERTIFICATE OF SERVICE

I, Charles Lee Mudd, Jr., do hereby certify that service of **BRIEF OF AMICUS CURIAE ELECTRONIC FRONTIER FOUNDATION IN SUPPORT OF RECONSIDERATION OF THE COURT'S ORDER GRANTING EARLY DISCOVERY OR, IN THE ALTERNATIVE, OF QUASHING PLAINTIFF'S PRE-COMPLAINT SUBPOENAS** was accomplished pursuant to Electronic Case Filing as to ECF Filing Users and shall be served upon all other parties listed in the attached Service List by sending said documents via postage pre-paid U.S. mail on this 22nd day of March 2011.


/s/Charles Lee Mudd, Jr.
Charles Lee Mudd, Jr.



Charles Lee Mudd, Jr.
Mudd Law Offices
3114 W. Irving Park Road
Suite 1W
Chicago, Illinois  60618
773.588.5410 (Telephone)
773.588.5440 (Facsimile)
cmudd@muddlawoffices.com
ARDC: 6257957

## **SERVICE LIST**

All counsel of record are ECF users and no *pro se* parties have filed appearances of record.