## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

OpenMind Solutions, Inc.,                    CASE NO. 3:11-cv-00092-GPM-SCW

      Plaintiff,                              Judge: Hon. G. Patrick Murphy

v.                                          Magistrate Judge: Hon. Stephen C. Williams

DOES 1 – 2925,
Individually, and as Representatives of a class,

      Defendants.

## PLAINTIFF'S MEMORANDUM OF LAW IN RESPONSE TO
## BRIEF OF *AMICUS CURIAE* ELECTRONIC FRONTIER FOUNDATION

The *Amicus Curiae* Electronic Frontier Foundation ("EFF") claims this Court would "benefit" from being educated on class actions.  OpenMind does not agree: EFF makes only vague conclusory assertions, inexplicably misstates the law, and fails to offer a single compelling argument for why the Court should reconsider its earlier order on discovery.  Plaintiff submits that the EFF is attempting to insert itself into this litigation at an early stage in order to further its anti-copyright agenda and enrich its member attorneys.  The EFF reveals that it is not a friend of this Court, but instead an interloper, not unlike a class action objector.  Like the objectors, the EFF raises red herring arguments in the pursuit of selfish aims at the expense of the efficient administration of justice.  The Court should ignore the EFF and its hollow cries of unfairness.

### PROCEDURAL HISTORY

Plaintiff OpenMind Solutions, Inc. ("OpenMind") brought this class action suit for copyright infringement against anonymous Defendants who illegally reproduced and distributed its copyrighted works over the Internet.  (Pl.'s Compl., Feb. 2, 2011, Doc. #2.)  Defendants' actual names are unknown.  Instead, each Defendant is known to OpenMind only by an Internet

1

Protocol ("IP") address, a number assigned to devices connected to the Internet. OpenMind was granted the Court's permission to take limited discovery to learn the identities of the anonymous Defendants. (Ct. Order Granting Pl.'s Mot. for Leave to Take Disc., Feb. 11, 2011, Doc. #7.) Plaintiff promptly complied with the Court's Order by issuing ISP subpoenas, and has been working diligently with the ISPs to keep the discovery process moving.

Barely a month later, the Electronic Frontier Foundation moved this Court for leave to appear as an *amicus curiae*. (EFF's Mot. for Leave to Appear as *Amicus Curiae*, Mar. 15, 2011, Doc. #11, at 2 [hereinafter Mot. for Leave #11].) Court granted the EFF's motion and the EFF filed its *amicus curiae* brief. (Brief of *Amicus Curiae* Electronic Frontier Foundation in Support of Reconsideration of the Court's Order Granting Early Discovery or, in the Alternative, of Quashing Plaintiff's Precomplaint Subpoenas, Mar. 22, 2011, Doc. #15) [hereinafter *Amicus* Brief]. OpenMind submits this memorandum of law in response to the EFF's *amicus* brief.

## ARGUMENT

The EFF makes unsubstantiated claims that OpenMind has "flouted" the "procedural and substantive" safeguards afforded to defendants in federal courts. (*Amicus* Brief, at 1.) But as OpenMind contends in response, it is the EFF that usurps the litigation prerogatives of the parties by raising issues it has no standing to argue and makes baffling misstatements of law on both procedural and substantive issues.

First, OpenMind reviews the many "procedural and substantive" safeguards that Defendants will enjoy throughout this litigation. Second, OpenMind highlights the errors the EFF makes in its "expert" analysis. Third, OpenMind addresses EFF's concerns about the use of defendant class actions by rights holders to combat rampant BitTorrent-based piracy. Finally, OpenMind concludes by exposing the EFF's motives for inserting itself into this litigation.

## I.     THE EFF FAILS TO EXPLAIN HOW DEFENDANTS' DUE PROCESS RIGHTS HAVE BEEN VIOLATED

The EFF argues issues not raised by the parties and goes far beyond the advisory role of an *amicus* by asking this Court to vacate its ruling on discovery, quash subpoenas, and dismiss the action.  (*Amicus* Brief, at 20.)  The EFF does not have standing to ask this Court to take any action; despite its efforts to insert itself into this proceeding, the EFF is not a party, and its intervention in this manner violates the "cases and controversies" clause of the United States Constitution, Article III.  The EFF justifies its appearance with a cry for the due process rights of the defendants, adamant this may be the Court's "last chance" to ensure that they are "treated justly."  (*Amicus* Brief, at 1.)  The EFF's hollow cry should go unanswered.  The Defendants in this suit will receive their due process, including notice, opportunity to be heard, and an opportunity to opt out.

First, the Defendants will be given notice of OpenMind's subpoenas[1] by their ISPs which will allow them to appear in this case and move the Court to quash the subpoena, just like other defendants in cases involving third party subpoenas.  The Cable Communications Policy Act of 1984, Pub. L. 98-549, 98 Stat. 2794 (codified as amended at 47 U.S.C. § 551 (2001)), requires that when cable operators disclose subscriber information pursuant to a court order, they must notify each subscriber about whom disclosure is sought about the subpoena and pending disclosure.  47 U.S.C. § 551(c)(2)(B) (2001).

---

[1] Throughout its filings and even on the cover of its *amicus* brief, EFF keeps referring to OpenMind's subpoena requests as "pre-complaint discovery" or "pre-complaint subpoenas." (Mot. for Leave #11 *passim*; *Amicus* Brief *passim.*)  OpenMind has filed a complaint (Pl.'s Compl., Feb. 2, 2011, Doc. #2.) and was granted permission to take limited discovery.  (Ct. Order Granting Pl.'s Mot. for Leave to Take Disc., Feb. 11, 2011, Doc. #7.)  OpenMind made its subpoena requests only after, and not before, it was given Court's permission to do so.

Second, the Defendants will have standing to quash Plaintiff's subpoenas, so long as they claim some right or privilege with regard to the documents sought.  Courts in Seventh Circuit have consistently held that a third party has standing to quash a subpoena under Fed. R. Civ. P. 45(d)(2) when the party claims some right or privilege with regard to the documents sought. *United States v. Segal*, 276 F. Supp. 2d 896, 900 (N.D. Ill. 2003) (citing *United States v. Raineri*, 670 F.2d 702, 712 (7th Cir. 1982)); *Orange v. Burge*, No. 04 C 168, 2006 WL 2567786, at *2 (N.D. Ill. Aug. 15, 2006); *Kessel v. Cook County*, No. 00 C 3980, 2002 WL 398506, at *2 (N.D. Ill. Mar. 14, 2002).  Third, Defendants will be given notice and an opportunity to opt out if the class is certified.  Fed. R. Civ. P. 23(c)(2)(B).

Third, defendants who do not elect to opt out of a certified class will receive competent representation from class counsel.  Thus, even absent defendants will gain representation, one of several reasons articulated by multiple commentators for the proposition that defendant classes benefit the *defendants*—an argument conspicuously absent in the EFF's brief.  Jonathan Reich, *The Class Defense: Why Dispersed Intellectual Property Defendants Need Procedural Protections*, 9 Duke Law & Technology Review (2010); Assaf Hamdani & Alon Klement, *The Class Defense*, 93 Cal. L. Rev. 685, 689–90 (2005).

Finally, the EFF accuses OpenMind of "deferring" class certification as if this was some integral part of a strategy to deprive Defendants of due process.  (Mot. for Leave #11, at 4; *Amicus* Brief, at 5.)  Once again, this vague charge is unsubstantiated.  The EFF makes this accusation barely a month after OpenMind filed its complaint and was granted leave to take limited discovery.  Federal Rule of Civil Procedure 23(c)(1) directs the Court to determine class status "at an early practicable time" and the Southern District of Illinois has no local rule addressing the timing of motions to certify.  The Federal Judicial Center investigated the timing

of class certification decisions and discovered that in 75% of the cases, the time from the filing

of the complaint to the filing of a motion to certify ranged from 6.5 months to 16.3 months.

Federal Judicial Center, Class Actions in Four Federal District Courts: Final Report to the

Advisory Committee on Civil Rules, at 28 (1996).

     Further complicating the matters is that identities of the Defendants are unknown.

OpenMind prepared and served subpoenas on ISP within days of receiving the Court's

permission.  Now, it must wait for ISPs to process those requests.  OpenMind depends on the

Internet Service Providers (ISPs) to receive identifying information pursuant to its subpoena

requests.

     The EFF is partly to blame for any delays in production.  Deputy Assistant Attorney

General for the Department of Justice recently testified before the House Committee

investigating the need to set a national standard for data retention by the ISPs.  *Data Retention as

a Tool for Investigating Internet Child Pornography And Other Internet Crimes: Hearing Before

the Subcomm. on Crime, Terrorism, and Homeland Security of the H. Comm. on the Judiciary*,

112th Cong. 63 (Jan. 25, 2011) (statement of Jason Weinstein, Deputy Assistant Att'y Gen.,

United States Department of Justice, Washington, DC), *available at* http://judiciary.house.gov/

hearings/printers/ 112th/112-3_63873.PDF (last visited Mar. 20, 2011).  Weinstein described a

guide published by the EFF entitled "Best Practices for Online Service Providers" where the EFF

"provides guidance about how to minimize what they referred to as 'the challenges of law

enforcement compliance.'  The EFF calls upon providers to obscure, delete as much data as

possible.  The EFF advises providers to use secure deletion utilities to scrub the hard drives so

that the logs cannot be obtained." *Id.*

So, after encouraging ISPs to obfuscate or destroy subscriber data, thus prolonging the time it takes for OpenMind to receive discovery, and minimizing the probability that this data will even exist when the ISPs receive the subpoenas, the EFF now accuses OpenMind of "deferring" class certification barely a month after filing the suit. The hypocrisy of this charge defies expression.

In conclusion, despite the EFF's dramatic rhetoric, it does not explain how, exactly, OpenMind has or will violate the Defendants' due process rights or why this is the Court's "last chance" to ensure a "just" result. Both federal law and the Federal Rules of Civil Procedure operate to ensure that defendants will be afforded due process throughout this suit, which, due to its class action nature, will be closely supervised by the Court. Despite EFF's contentions about deliberate delays and its best efforts to make the discovery process for copyright owners as challenging as possible, OpenMind is aggressively pursuing the discovery and gathering evidence it needs for class certification. But, the EFF's misstatements are not confined to hollow cries regarding due process—they extent into other areas of its "expert analysis" as well.

## II.   THE EFF MISSTATES THE APPLICABLE LAW IN ITS "EXPERT ANALYSIS"

The EFF declares that "the Court would benefit" from its "expert analysis" of "the relevant statutory and Constitutional [issues] raised by this litigation." (Mot. for Leave #11, at 1, 2, 3.) In its *amicus* brief, however, the EFF confuses the Fifth and Fourteenth Amendment Due Process clauses; ignores the Supremacy Clause by advocating that this federal Court adopt the *Dendrite* test, which is grounded in the New Jersey State Constitution; asks the Court to adopt a defective subpoena notice; and discusses joinder cases that are wholly inapplicable to class actions.

**A.      The EFF Confuses Fifth and Fourteenth Amendment Due Process**

Although the EFF acknowledges—in a footnote—that this Court may exercise its jurisdiction over non-resident defendants under the Illinois long-arm statute, it then insists that defendants must have minimum contacts with the State of Illinois in satisfaction of the Fourteenth Amendment Due Process clause.  (*Amicus* Brief, at 11 n.5; *id.* 11–13.)  But in federal question cases such as this, after establishing that defendants are amenable to the service of process under a state's long-arm statute, the plaintiff must demonstrate that bringing the defendant into court comports with Fifth, not Fourteenth, Amendment Due Process requirements.  *LFG, L.L.C. v. Zapata Corp.*, 78 F. Supp. 2d 731, 734 (N.D. Ill. 1999).

To satisfy Fifth Amendment due process requirements, a defendant must only have sufficient contacts "with the United States as a whole rather than any particular state or other geographic area."  *United States v. De Ortiz*, 910 F.2d 376, 382 (7th Cir. 1990); *see also United Rope Distribs., Inc. v. Seatriumph Marine Corp.*, 930 F.2d 532, 534 (7th Cir. 1991) ("When a national court applies national law, the due process clause requires only that the defendant possess sufficient contacts with the United States.").  A defendant "has sufficient contacts with the United States to support the fairness of the exercise of jurisdiction over him by a United States court" if he resides on American soil.  *See Fitzsimmons v. Barton*, 589 F.2d 330, 333 (7th Cir. 1979).  The EFF's own technologist acknowledges that defendants' IP addresses resolve to various locations within United States.  (*Amicus* Brief, Ex. 2, Decl. of Seth Schoen, ¶ 11, at 3.)[2]  Thus, a discussion of the Fourteenth Amendment Due Process Clause is irrelevant, and the standard of the Fifth Amendment clause is easily satisfied.  OpenMind is prepared to fully brief

_____

[2] EFF's technologist claims to have compiled a list of approximate geographic locations for each IP address and attached it to his Declaration as Exhibit A.  (*Amicus* Brief, Ex. 2, Decl. of Seth Schoen, ¶ 20, at 5.)  This Exhibit is missing from EFF's filings.

multiple and overlapping theories of personal jurisdiction that exist in this case at the Court's direction or when raised by a party.

Incidentally, the EFF mentions the words "fishing expedition" no less than four times in its brief in support of the proposition that OpenMind cannot undertake discovery into jurisdictional facts. (*Amicus* Brief *passim*.)  The Supreme Court has explored this subject and concluded that "[n]o longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947).  The Seventh Circuit applying *Hickman* in a class action discovery context concluded that even when confronted with discovery abuse, the district court must still issue a limited "fishing license" so the issue of class determination can be explored. *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130, U. A.*, 657 F.2d 890, 904 (7th Cir. 1981). Here, instead of embarking on an *Eggleston*-style "fishing expedition," OpenMind merely seeks basic contact information so it can the develop the evidence necessary for a class certification motion.  But the EFF wants this Court to reconsider this issue decided a month ago when it followed controlling precedent and granted its discovery order.  The Court should decline.

**B.      The EFF Ignores the Supremacy Clause of the United States Constitution**

Finally, the EFF ignores the Supremacy Clause by insisting that this federal Court apply the New Jersey State Constitution instead of the United States Constitution. (*Amicus* Brief, at 17.) ("The *Dendrite* test most accurately and cogently outlines the important First Amendment interests of the Doe Defendants and should be applied here.")  But as *Dendrite* court itself cogently points out, the right to free speech under the New Jersey Constitution is broader than the First Amendment right against governmental abridgement of speech. *Dendrite Intern., Inc. v. Doe No. 3*, 775 A.2d 756, 765–66 (N.J. Super. Ct. App. Div. 2001).  Under the New Jersey State

8

Constitution, the "State right of free speech is protected not only from abridgment by government, but also from unreasonably restrictive and oppressive conduct by private entities." *Id.* (quoting *New Jersey Coalition Against War in the Middle East v. J.M.B. Realty*, 650 A.2d 757, 771 (N.J. 1994)).

Not surprisingly, despite being hailed as a "seminal case" by the EFF (*amicus* Brief, at 17), the *Dendrite* court's interpretation of the New Jersey State Constitution has never been applied by federal courts in this Circuit and was expressly rejected by the Illinois Court of Appeals in *Maxon v. Ottawa Pub. Co.*, 929 N.E.2d 666, 675–76 (Ill. App. Ct. 2010.) Instead of dedicating five pages of its brief to an invitation to trash the Supremacy Clause of the United States Constitution, the EFF should have discussed whether the First Amendment protects copyright infringement as "speech" and whether this "speech" is of public or private concern— the relevant standard under Supreme Court precedent. *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 555–56, 569 (1985); *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 758–59 (1985).

**C.     The EFF's Proposed Form of Subpoena Notice is Defective**

The EFF's proposed Notice Regarding Issuance of Subpoena contains contradictory, confusing, and outright erroneous information. (*Amicus* Brief, Ex. 1, Court-Directed Notice Regarding Issuance of Subpoena Seeking Disclosure Of Your Identity.) The proposed notice tells the Defendants that the EFF "cannot advise you about what grounds exist, if any, to challenge the subpoena." (*Id.* at 2.) Then, on the very next page, the EFF proceeds to do just that by erroneously advising Defendants that they "may also be able to challenge the subpoena on a number of other grounds, including . . . 'joinder.'" (*Id.* at 3.) The discussion of joinder is

outright irrelevant in a class action lawsuit.  This Notice is an open invitation to flood this Court with fruitless motions on irrelevant issues.  With an *amicus* like this, who needs enemies?

Next, the EFF imparts the following bit of wisdom to the Defendants: "If you file a motion . . . your identity will not be disclosed until the court makes a decision on your motion." (*Id.* at 2.)  As anyone who practices law knows, unless a document is filed under seal, its contents are made public immediately after filing.  The identity of any John Doe who files using his actual name and address, as *pro se* litigants frequently do, will be disclosed to the world as soon as that motion hits PACER.

The EFF's proposed notice provides little benefit to the Defendants, and will cause this Court to be flooded with groundless motions to quash.

**D.     Severance Is a Remedy Available in Joinder Cases, Not Class Actions**

Finally, the EFF dedicates a substantial portion of its Motion for Leave and its *amicus* brief to discussing cases involving severed for improper joinder.  (Mot. for Leave #11, at 1, 3–4; *Amicus* Brief, at 1–2.) These cases are governed by different Civil Procedure rules, tests, and precedent and are in no way relevant to this action because improper joinder is not a basis upon which a class action can be attacked.  The point that joinder of 2,925 Defendants is impracticable in satisfaction of Rule 23(a)(1)'s requirement is an argument in favor of this case and can be succinctly made in a paragraph.

The only defendant class action case cited by the EFF in its brief in attempted support of its proposition that "federal courts disapprove of mass joinder of Defendants in copyright infringement cases" (*amicus* Brief, at 1) is inapposite because it was a 23(b)(2) class action and not 23(b)(3), as is this case here.  *Tilley v. TJX, Inc.*, 345 F.3d 34, 39–40 (1st Cir. 2003).  In *Tilley*, the court relied on textual interpretation and the drafting history of 23(b)(2) to conclude

that a plaintiff could not maintain a defendant class action under this section. *Id.* The court did not limit itself to merely commenting that it was "cognizant of the idiosyncratic circumstances that would seem in some ways to make class certification an attractive device in cases such as Tilley's (in which a single copyright holder seeks to prevent continued infringement on the part of many defendants who sell identical articles)." *Id.* at 43. The appellate court, in fact, encouraged the district court "to explore whether some suitable basis for class certification in fact exists," *id.*, directly contradicting the EFF's "disapproval" argument.

In conclusion, the legal principles in this case are straightforward, but the EFF still gets them wrong. The EFF substitutes the Fourteenth for the Fifth Amendment, "cherry picks" state court decisions without properly explaining their context, proposes a defective subpoena notice, and discusses joinder at length in a class action case. The EFF makes baffling misstatements of the law and distorts reality with respect to the class action aspects of this case, as well.

## III. IN DEFENSE OF DEFENDANT CLASS ACTIONS AS A PROPER PROCEDURAL DEVICE TO PROSECUTE MASS DIGITAL PIRACY

The EFF correctly points out that OpenMind has not brought a class certification motion and therefore the issue is not before the Court. (*Amicus* Brief, at 5.) It then proceeds to overstep its role as an *amicus* and prematurely raise this issue typically argued by class representatives on a motion to certify. (*Amicus* Brief, at 1–8.) As discussed above, even in "normal" class actions where the identity of defendants is known, it takes months to gather the evidence necessary to properly argue these issues on class certification motion. Here, OpenMind is at the mercy of third parties and must wait before it can develop its case fully.

But once again, the EFF ignores constraints imposed on litigation by time. In yet another attempt to hijack the adversarial process and argue the propriety of a defendant class action, the EFF argues that OpenMind's "proposed class violates nearly every requirement of Rule 23."

11

(*Amicus* Brief, at 3.)  The EFF begrudgingly grants OpenMind "numerosity" prong of Rule 23, but argues that "the purported class . . . clearly violates definiteness, commonality, typicality, adequacy, predominance, and superiority."  (*Amicus* Brief, at 4.)  The EFF fails in every step of its argument.  Because the EFF is not a party, and the issue of class certification is not before the Court, OpenMind's response to the EFF's arguments can be summarized in a sentence: any defects in class structure will be properly resolved through the adversarial process between the *parties*, who will bring them to the Court's attention.  OpenMind will be able to demonstrate this action satisfies Rule 23 requirements, in due course, and in time for class certification motion.

## A.   The EFF Conflates Adequacy of Named Representatives with Adequacy of Class Counsel and Questions This Court's Ability to Discern Adequate from Inadequate

The EFF accuses OpenMind of depriving Defendants of adequate representation and then proceeds to address concerns over class counsel.  (*Amicus* Brief, at 7–8.)  Not only are EFF's remarks premature, they are once again premised on a misstatement of law.  As this Court has explained, adequacy of counsel is governed by the Rule 23(g), while adequacy of representation, referred to in Rule 23(a)(4), refers to the qualifications of the named class representative.[3]  *Cima v. WellPoint Health Networks, Inc.*, 250 F.R.D. 374, 379, 380 n.4 (S.D. Ill. 2008).  A class representative is considered adequate "if his interest in proving his claim[s] will lead him to prove the claims of the remainder of his class."  *Id.* at 379. (internal quotations omitted).  Thus, to meet the requirement of adequacy, a class representative must not have "antagonistic or

---

[3] Some older cases set out "adequacy" as a two-part inquiry, whether the named plaintiff's representation in protecting the distinct interests of class members is adequate, and whether the named plaintiff's counsel is adequate.  *See, e.g.*, *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir.1993).  But this changed in 2003: as the commentary to Rule 23 explains in light of 2003 amendments which added new section 23(g), "Rule 23(a)(4) will continue to call for scrutiny of the proposed class representative, while [Rule 23(g)] will guide the court in assessing proposed class counsel as part of the certification decision." Fed. R. Civ. P. 23 advisory committee's note.

conflicting claims" with the members of the purported class.  *Id.* at 379–80.  "Absent any conflict between the interests of the representative and [other class members], and absent any indication that the representative will not aggressively conduct the litigation, fair and adequate protection of the class may be assumed."  *Id.* at 380.

It is difficult to speculate at this point on the adequacy of the class representative when OpenMind has yet to ascertain the identities of the Defendants.  However, the EFF has failed to even speculate as to what inconsistencies between the interests of the named Defendant and the members of the proposed class may exist that sufficiently establish the inadequacy of that hypothetical defendant as a class representative.  So long as the defendant class representative has some kind of personal interest in the issue to be decided by the class action, and so long as that issue is common to the other class members as well, the representative in vigorously defending himself will more or less defend everyone else in the class.  Note, *Defendant Class Actions*, 91 Harv. L. Rev. 630, 639–40 (1978).

The EFF's argument on adequacy of representation is really an argument on inadequacy of counsel because the financial burden will be borne by a single defendant, which ignores the possibility of pooling of financial resources by multiple named Defendants and broad supervisory authority of this Court to appoint adequate counsel.

First, OpenMind is not aware of an instance of when not being able to afford an attorney was ever a successful defense in a civil case.  But as commentators suggest, many solutions exist.  For example, multiple named defendants can pool resources.  Robert E. Holo, *Defendant Class Actions: The Failure of Rule 23 and a Proposed Solution*, 38 U.C.L.A. L. Rev. 223, 234 (1990).  In addition, as another commentator points out,  "as a general rule, it is unlikely that a defendant who represents a class on a common issue will incur significant additional expenses;

the class representative can simply conduct the same defense he would have presented had he been sued as an individual." *Defendant Class Actions*, 91 Harv. L. Rev. at 648.  Any additional costs to coordinate representative's efforts with those of other representatives or class members with an active interest in litigation are no different from those imposed on any defendant involuntarily involved in multiparty litigation.  *Id.* at 649.  Moreover, the defendant may actually benefit from the certification of the class in the event that other class members intervene and improve the advocacy on a common issue.  *Id.*

Second, the Court has broad authority under the Rule 23(g) to consider multiple applicants for class counsel, may direct them to provide any information it considers relevant, and if after review of all applicants, it concludes that none would be satisfactory class counsel, the Court may reject all applications, recommend that the application be modified, invite new ones, or make any other appropriate order regarding selection and appointment of class counsel.

Although the EFF doubts this Court's ability to discern between adequate and inadequate class counsel, (*amicus* Brief, at 7–8), OpenMind does not share the EFF's concerns.  OpenMind is interested in seeing this class certified to bind the entire class of Defendants instead of engaging in piecemeal litigation, which hinges on Court's approval of class counsel.  OpenMind has every confidence that this Court would not certify a class with inadequate counsel, making any attempts to suggest it counterproductive; further, inadequate representation would leave OpenMind vulnerable to collateral attacks on any judgment that may be reached in this matter for due process violations.  Finally, even though OpenMind may select a class representative in the absence of volunteers, OpenMind will not necessarily select the class counsel: named Defendant will likely already have retained counsel by then and may choose to continue with that counsel through the rest of the litigation if it satisfies Rule 23(g)'s requirements.

**B.** **The EFF Offers Unpersuasive Arguments With Respect to Rule 23's Other Requirements**

The EFF also contends that the proposed class does not meet Rule 23's other requirements, such as "definiteness, commonality, typicality, . . . predominance, and superiority." (*Amicus* Brief at 4.)  This argument is also without merit.

First, "definiteness" is not a Rule 23 requirement.  A class definition is something that evolves through the adversarial process during discovery and litigation, and subject to Court's approval on a motion to certify the class.  OpenMind will amend and narrow its definition appropriately as the case develops.

Second, the commonality requirement has been characterized by this Court as a "low hurdle" that is easily surmounted because there needs to be only "one question of law or fact common to the class."  *Westefer v. Snyder*, No. 94 C 3476, 2006 WL 2639972, *3 (S.D. Ill. 2006).  Class certification will not be defeated solely because there are some factual variations among the grievances of the class members.  *Id.*  OpenMind enumerated several issues in common to the proposed class (Compl. ¶ 35.) and the EFF failed to discuss why any particular issue would fail to satisfy the commonality requirement.

Third, the EFF argues that if certain issues become moot during the course of the litigation, it would "leav[e] a class lacking in the required typicality." (*Amicus* Brief, at 6.)  The EFF appears to be confusing typicality and commonality requirements.  Typicality refers to the requirement that "the claims or defenses of the representative parties are typical of the claims or defenses of the classes."  Fed. R. Civ. P. 23(a)(3).  A class simply cannot "lack typicality" when the focus of this prong's inquiry is on the class representative.  Further, "[t]ypical does not mean identical, and the typicality requirement is liberally construed. . . . Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct

15

that gives rise to the claims of the class members, and if it is based on the same legal theory." *In re General Motors Corp. Dex-Cool Products Liability Litigation*, 241 F.R.D. 305, 312 (S.D. Ill. 2007) (although this case refers to claims, in a defendant class action focus would be on the defenses). Every Defendant in this case is alleged to engage the same conduct—downloading copyrighted content via BitTorrent protocol—and therefore, every Defendant's defense are likely to be typical of the class.

The EFF's follies in addressing the "adequacy" prong are discussed above. In due course and with the Court's approval, the Defendant class will have adequate representation, and the vast majority of the Defendants will be represented better and free of charge than they otherwise would be in individual lawsuits. The EFF does not discuss alleged failures of the proposed class to satisfy superiority requirement, perhaps because it cannot make a non-frivolous argument.

Finally, the EFF alleges that individual defenses such as issues of copyright registration will predominate over common and typical issues. As pointed out above, factual differences or variations in grievances do not destroy commonality or typicality. But more importantly, this argument shows that the EFF lacks an understanding of fundamental differences between plaintiff and defendants class actions. Defendant class actions are a procedural device that allows offensive assertion of collateral estoppel on the common issues against nonparties, rather than a method of conducting a unitary proceeding that determines the rights and liabilities of each class member represented in the suit. *Defendant Class Actions*, 91 Harv. L. Rev. at 637. In many defendant class actions, resolution of the class issue is but a prelude to separate trials for the class members on more individualized questions. But the class need not invariably be decertified after adjudication of all common issues. *Id.* at 651. Defendant class action can be structured to provide advocacy relevant to the judicial formulation of general rules applicable to

16

the circumstances of each class member, such as calculation of damages.  *Id.*  Any defects in the structure of the class will be brought to light by the adversarial process itself.  *Id.* at 641.  Once the plaintiff moves for certification of a defendant class, the proposed representative is likely to resist, advancing any factors that may render his representation deficient or class treatment inappropriate.  *Id.*  A designated representative who lacks the resources to put up much of a fight, for example, has a strong incentive to advise the court of that fact.  *Id.*  If any deficiencies are brought to the Court's attention, the Court will be able to respond to them and protect the absentees' interest through appropriate orders.  *Id.*  For example, the Court can create subclasses if there are certain issues common only to some members, or it can improve the quality of representation by ordering the plaintiff to name another class member to complement or supplant the originally named defendant representative.  *Id.*

To conclude its defense of defendant class actions, OpenMind would like to point out that this procedural device conserves judicial resources and private litigation costs, both absolutely by preventing relitigation of the same issues, and relatively by spreading the expenses of resolving common issues over a large number of claims.  Moreover, by ensuring consistency in adjudication and by allowing certain instances of noncompliance to be brought before the courts with greater frequency, defendant class actions promote fuller enforcement of the law.  The EFF's arguments to the contrary are nothing more than a half-baked attempt to muddle the issues and hijack the adversarial process for the selfish interests explored below.

## IV.   THE EFF IS A NEW BREED OF CLASS OBJECTOR AND NOT A FRIEND OF THIS COURT

As Judge Posner noted in *Ryan*: "The vast majority of *amicus curiae* briefs are filed by allies of litigants . . . .  Such *amicus* briefs should not be allowed.  They are an abuse.  The term "*amicus curiae*" means friend of the court, not friend of a party." *Ryan v. Commodity Futures*

*Trading Com'n*, 125 F.3d 1062, 1063 (7th Cir. 1997).  The EFF has consistently demonstrated

that is not a "friend of the Courts" but rather a "friend" of, and an advocate for, anyone using

digital technology to violate the rights of copyright owners.  According to the EFF's own website

archiving filings in copyright infringement cases, it has attempted to file substantially similar

briefs with virtually identical arguments on personal jurisdiction, joinder, and the First

Amendment for at least the past seven years.  *See* Electronic Frontier Foundation, RIAA v. The

People Case Archive, http://w2.eff.org/IP/P2P/ riaa_archive.php (last visited Mar. 23, 2011).

 The EFF vilifies plaintiffs attempting to enforce their legal rights by using derogatory

terms such as "copyright trolls"—in fact, the EFF has an entire section of its website under that

heading, cited in its motion for leave to appear as *amicus*.  (Mot. for Leave #11, at 3 n.3, citing

Copyright Trolls, Electronic Frontier Foundation, https://www.eff.org/issues/copyright-trolls

(last visited Mar. 11, 2011).)  The EFF also did not hesitate to refer to OpenMind as a "copyright

troll" in its press release announcing that it already "asked the judge to quash the subpoenas"—

mere hours after filing the motion and almost a week prior to actually being granted a leave to

file as an *amicus*.  Press Release, Electronic Frontier Foundation, EFF Urges Judge to Reject

Dangerous New Copyright Troll Strategy (Mar. 16, 2011), https://www.eff.org/press/archives/

2011/03/16.  The "DONATE to EFF" button accompanying the release could hardly be less

conspicuous, and it is not on accident.

 Although the EFF describes itself as a nonprofit civil liberties organization, its attorneys,

who help fund the EFF, are distinctly for-profit.  The EFF's attorneys are essentially class action

objectors who insert themselves into litigation, usurp the prerogative of litigants, and use the

courts to generate new clients for their practices.  Charles Mudd, appearing on the brief, owns

Mudd Law Offices, a law firm that frequently represents anonymous copyright infringers in

settlement negotiations and litigation.  Counsel for OpenMind has daily contacts with this firm arising from similar suits and understands that this type of litigation is a significant source of revenue for it.  But Mudd Law Offices does not have sufficient class action experience to satisfy the requirements of Fed. R. Civ. P. 23(g), and even if it did, there is no guarantee it would be appointed class counsel by this Court.  Thus, Mudd Law Offices is choosing the role of a "class objector," protesting the suit from the outset, so it may continue to represent individual John Does instead of allowing them to benefit from the class action model.  EFF, too, stands to benefit from the influx of dues from new members recruited via publicity generated from EFF's participation in this suit, often promoted using inflammatory language.

The EFF itself indicates little faith in its own arguments to scuttle Plaintiff's suit, as they also ask the Court to mandate that OpenMind send out marketing materials in the form of the proposed Subpoena Notice.  (*Amicus* Brief, at 20).  The proposed Subpoena Notice features numerous references to the EFF, its website, and its *amicus* brief filing authored by none other than EFF attorney Charles Mudd.  (*Amicus* Brief, Ex. 1.)  EFF and Mudd hope to place this "flyer" in front of each Defendant to solicit new paying members and clients, even though the legal theories in the Proposed Notice are largely defective and do not benefit the Defendants.

## CONCLUSION

The EFF refers to this lawsuit as "Potemkin" class action.  Far from being a sham front, this suit is more like the uprising on the legendary dreadnaught battleship of the same name.  The rebellion on board Battleship *Potemkin* by the sailors who stood up for their rights was the first step towards the Russian Revolution of 1917 that overthrew an oppressive regime.[4]

---

[4] These historic events are not subject to reasonable dispute, and are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.  This is where judicial notice is appropriate.

Here, OpenMind has had enough of the unbridled infringement of its rights and seeks to enforce its copyrights via an effective procedural device.

The EFF lacks substantive grounds on which to challenge OpenMind's suit.  The EFF offers vague references to the absence of due process, but fails to offer specific examples as to how the Defendants' Due Process rights have been or will be violated.  The EFF's substantive positions on personal jurisdiction, the First Amendment, and joinder are either irrelevant or deeply flawed.  Finally, the EFF's assessment of the propriety of using a defendant class action to pursue copyright infringers is unpersuasive.  Like the Tsarists autocrats, the EFF claims a right to lead the people, but instead attempts to usurp the people's prerogative for its own enrichment.

Respectfully submitted,

OpenMind Solutions, Inc.

DATED: March 23, 2011

By:   /s/ John Steele_____
       One of its Attorneys

JoDee Favre # 6203442             John Steele # 6292158
Favre Law Office, LLC             Steele Hansmeier PLLC
110 W. Main St.                   161 N. Clark St.
Belleville, IL 62220              Suite 4700
618-604-0024; Fax 618-233-9377    Chicago, IL 60601
jfavre@favrelaw.com               312-880-9160;   Fax 312-893-5677
                                  jlsteele@wefightpiracy.com
                                  *Lead Counsel*

**Attorneys for Plaintiff**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on March 23, 2011, all parties of record who are deemed to have consented to electronic service are being served a true and correct copy of the foregoing document using the Court's CM/ECF system.

<u>s/ John Steele</u>
JOHN STEELE
